United States District Court
Southern District of Texas
**ENTERED**
September 26, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAIME EDUARDO VILLANUEVA HERRERA, | § § § | |
| *Petitioner,* | § § | |
| vs. | § § | CIVIL ACTION NO. H-25-3364 |
| RANDALL TATE, Warden, *et al.,* | § § § | |
| *Respondents.* | § | |

## MEMORANDUM OPINION AND ORDER

The petitioner, Jaime Eduardo Villanueva Herrera, is currently in the custody of the United States Department of Homeland Security, Bureau of Immigration and Customs Enforcement (ICE), at the Montgomery Processing Center in Conroe, Texas. He has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the procedures used to re-detain him and his continued detention as being in violation of the applicable statutes, regulations, and his due process rights. (Dkt. 1). The respondents[1] answered the petition with a motion for summary judgment. (Dkt. 12). Villanueva has filed a response. (Dkt. 13). Having reviewed the petition, the motion and its attached exhibit, the response, all matters of record,

---

[1]The named respondents are Warden Randall Tate of the Montgomery County Processing Center, Department of Homeland Security Secretary Kristi Noem, Acting Director of ICE Todd Lyons, and Houston ICE Field Office Director Bret Bradford. (Dkt. 1, p. 1).

and the law, the Court denies the respondents' motion for summary judgment, grants Villanueva's habeas petition, and orders his immediate release. The reasons for this ruling are explained below.

## I.   **BACKGROUND**

Villanueva is a Mexican national who first came to the United States as a child. (Dkt. 1, p. 16). He has committed a number of crimes here—mainly drug offenses—and he has been removed to Mexico several times in the past. (*Id.* at 16-17). He has snuck back into the United States after each removal. (*Id.*).

On January 20, 2017, the immigration court issued an Order of Removal for Villanueva, but it simultaneously granted a withhold of his removal to Mexico. (*Id.* at 18-26). This was based on testimony, which the immigration court found credible, that Villanueva's life would be in danger in Mexico because of certain family connections and prior threats made against him by gang members and the Mexican federal police. (*Id.*). The government did not appeal the order withholding Villanueva's removal to Mexico. (*Id.* at 5). Because of the order withholding removal to Mexico, the government must locate a third country that would be willing to accept Villanueva to be able to effect his removal from the United States.

Villanueva was initially detained while the government attempted to find a third country that would accept him. (*Id.*). When the government was unable to do so, it released Villanueva on March 23, 2017, under an Order of Supervision. (*Id.*

at 5, 29-31). Implicit in this decision was a finding that Villanueva was nonviolent and would remain so if released, that he was not likely to pose a threat to the community if released, that he was not likely to violate the conditions of his release, and that he did not pose a flight risk. *See* 8 C.F.R. § 241.4(d)(1) (permitting the release of a noncitizen "if the [noncitizen] demonstrates to the satisfaction of the Attorney General or her designee that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such [noncitizen]'s removal from the United States."); 8 C.F.R. § 241.4(e) (listing the criteria for release as including a determination that the noncitizen "is not likely to pose a threat to the community following release" and "does not pose a significant risk of flight if released"). The Order of Supervision required Villanueva to maintain contact with an assigned ICE official and report in person when requested, not commit any new crimes, cooperate with ICE in locating a third country to accept him, complete an application for any travel documents that ICE requested, and cooperate with his removal once a third country is identified. (Dkt. 1, pp. 29-31).

Once a noncitizen subject to an Order of Removal has been released from detention under an Order of Supervision, there are detailed regulations concerning when and how that Order of Supervision may be revoked. *See* 8 C.F.R. § 241.4(*l*). Generally speaking, the Order of Supervision may be revoked if the noncitizen

violates any of its conditions. *See* 8 C.F.R. § 241.4(*l*)(1); § 241.4(*l*)(2)(ii). In addition, an Order of Supervision may be revoked when it is appropriate to enforce a removal order or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(*l*)(2)(iii), § 241.4(*l*)(2)(iv). Regardless of the reason for the revocation, only two officials have the authority to revoke an Order of Supervision: the Executive Associate Director of ICE or a district director of ICE if the "circumstances do not reasonably permit referral of the case to the Executive Associate [Director]." 8 C.F.R. § 241.4(*l*)(2). When an Order of Supervision is revoked, the noncitizen must "be notified of the reasons for revocation of his or her release" and must be afforded a prompt "initial informal interview" to allow the noncitizen an opportunity to respond to and contest the reasons for revocation. 8 C.F.R. § 241.4(*l*)(1).

In addition, there are specific regulations pertaining to noncitizens whose removal to a particular country has been withheld. *See* 8 C.F.R. § 1208.16(b). To address any concerns that a noncitizen could be removed to a third country that would simply, in turn, send the citizen back to his home country, a noncitizen with an order withholding removal to a particular country must be given notice of the country to which the government intends to remove him and an opportunity to apply for protection from removal to that country. *See* 28 C.F.R. § 200.1; *see also Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153, 2154 (2025) (Sotomayor, J.,

4/31

dissenting) (describing the provisions of the Convention Against Torture and its limits on third country removals).

Moreover, the length of time that a noncitizen under an Order of Removal may be held in detention is governed by statutes, regulations, and case law. After an Order of Removal is entered, the government must detain the noncitizen for 90 days, during which the government must attempt to remove the noncitizen. *See* 8 U.S.C. § 1231(a)(1); 8 C.F.R. § 241.4(g)(1)(ii). This 90-day removal period runs from the latest of the date the Order of Removal becomes final, the date on which a court-ordered stay of removal expires, or the date the noncitizen is released from detention. *See* 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 241.4(g)(1)(i). Detention may be extended beyond the 90-day removal period if the noncitizen fails or refuses to apply in good faith for travel documents as directed by ICE. *See* 8 C.F.R. § 241.4(g)(1)(i). Detention may also be extended if the noncitizen is inadmissible under 8 U.S.C. § 1182, if the noncitizen has committed certain crimes, and if the government determines that the noncitizen poses a risk to the community or is a flight rise. *See* 8 U.S.C. § 1231(a)(6). But the Supreme Court has held that a noncitizen may not, consistent with the Due Process Clause, be detained indefinitely. *See Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). Instead, due process requires that a noncitizen be detained for no longer than the time "reasonably necessary to secure removal." *Id.* at 699. Therefore, "if removal is not reasonably foreseeable, the court

should hold continued detention unreasonable and no longer authorized by statutes." *Id.* at 699-700. The Court also held that 180 days is a "presumptively reasonable" period for removing a noncitizen. *Id.* at 701. But if there is no reasonably likelihood that the noncitizen will be removed in the foreseeable future, the government may not continue to detain him. *Id.*

Villanueva has been living in the Houston area under his Order of Supervision since March 2017. (Dkt. 1, p. 5). He alleges that he has reported to ICE as required. (*Id.*). He has not been arrested, charged with, or convicted of any criminal offense since his release. (*Id.* at 5-6). The government has never requested Villanueva to take any actions to obtain travel documents from any third country. (*Id.* at 5).

On July 20, 2025, ICE officials arrested Villanueva without notice, and he has been detained ever since. (*Id.* at 6). Villanueva alleges that he has not been given a copy of any order revoking his Order of Supervision. (*Id.*). He has not been given notice of the reasons why his Order of Supervision was revoked, assuming that it even legally was revoked. (*Id.*). He has not been given the informal interview required by the regulations and statutes. (*Id.*). He has been told that he will be detained until ICE can find a third country that is willing accept him—however long that takes. (*Id.*). And the government has refused to identify the countries to which it is trying to remove him. (*Id.*).

On July 21, 2025, Villanueva filed this petition for writ of habeas corpus. In

that petition, he does not challenge his removal or the government's right to effect his removal. Instead, contends that the *process* the government is using to attempt to remove him violates his Fifth Amendment due process rights, the provisions of the Immigration and Nationality Act and its implementing regulations, and his due process rights under *Zadvydas*. As relief, he asks the Court to order his immediate release, restore his Order of Supervision, and order the government to comply with its rules and regulations regarding notice and removal. (*Id.* at 11).

The Court ordered the government to respond to Villanueva's petition, and it responded with a motion for summary judgment. (Dkt. 12). The motion is supported by the declaration of a Charles Scroggins, who is the local ICE agent in charge of Villanueva's case. (Dkt. 12-1). In his declaration, Scroggins sets out Villanueva's criminal history and the history of his removal proceedings. (*Id.* at 4-6, 7-8). All of these events occurred before January 2017, when the Order of Removal was entered. (*Id.*). The declaration also sets out all of the process that Villanueva received before the Order of Removal was entered. (*Id.*).

The declaration further states that on March 12, 2017, ICE contacted three separate countries, requesting permission to remove Villanueva to those countries. (*Id.* at 6). The declaration does not identify the countries that ICE contacted, but Scroggins attests that all of the countries refused to issue travel documents for Villanueva. (*Id.*). The declaration also states that on October 12, 2023, ICE again

7/31

contacted "other countries" about obtaining travel documents for Villanueva. (*Id.*). The declaration does not identify what "other countries" the government contacted or how many countries it contacted, but it does state that these unidentified countries refused to accept Villanueva. (*Id.*). The declaration does not state that ICE has ever requested that Villanueva apply for travel documents to any of the unidentified countries ICE contacted, nor does it identify any other reason for Villanueva's re-detention.

Scroggins's declaration states that the government arrested Villanueva "due to the current administration's renewed emphasis on removing criminal aliens." (*Id.*). The declaration states that Villanueva has now "been found to be a danger to the community." (*Id.*). But it does not contain any facts showing that the government has complied with any of statutes or regulations that apply to noncitizens who are subject to an Order of Removal and who have been released under an Order of Supervision. It does not contain any facts showing that an order revoking Villanueva's Order of Supervision was validly signed by anyone authorized to do so, that notice was provided to Villanueva of the reasons for the revocation, or that he has been provided with the required informal interview. The declaration also contains no facts concerning the government's efforts to identify a third country willing to accept Villanueva, other than a conclusory statement that the government has contacted "serval [sic] countries" without success. (*Id.*).

In its motion for summary judgment, the government contends that it has lawfully detained Villanueva under his Order of Removal because he is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), because he is a threat to the community, and because ICE is actively working to effect his removal. (Dkt. 12, pp. 2, 6). It contends that the Court does not have jurisdiction to review its decision to revoke Villanueva's Order of Supervision. (*Id.* at 7-8). And it contends that Villanueva's *Zadvydas* claim is premature because he has not yet been detained for six months. (*Id.* at 8-9). The government does not address any of Villanueva's claims that he has been denied due process due to the government's failure to comply with the governing statutes and regulations.

In his response, Villanueva contends that the government's evidence is insufficient to show that he is lawfully detained. (Dkt. 13). He also contends that the government has failed to show that his removal is likely in the foreseeable future given that it has not even identified a proposed country for removal. (*Id.* at 2). Villanueva requests that the Court either order his immediate release or schedule a hearing on the matter. (*Id.* at 11).

## II.   <u>LEGAL STANDARDS</u>

### A.   <u>Petitions for a Writ of Habeas Corpus</u>

Villanueva seeks release through a petition for writ of habeas corpus under 28 U.S.C. § 2241. To be entitled to the issuance of a writ of habeas corpus, the

petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) ("[N]either habeas nor civil rights relief can be had absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." (quoting *Hilliard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985) (per curiam))).  The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992)); *see also Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.  When the Court finds that a petitioner's constitutional rights have been violated, the petitioner is entitled to the issuance of the requested writ.

## B.    <u>Motions for Summary Judgment</u>

The government has moved for entry of summary judgment.  "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  Under Rule 56, the moving party is

entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of providing the Court with a legal basis for its motion, and it must identify those portions of the record that it contends demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* This standard "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250. To meet this burden, the moving party must inform the Court of the basis for the motion and identify those portions of the record which demonstrate the absence of a genuine dispute of material fact *and* the appropriateness of judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 323. If the moving party fails to meet its initial burden, the motion for summary judgment must be denied. *See Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

## III.   **DISCUSSION**

Noncitizens, even those subject to a final Order of Removal, have

11/31

constitutional rights just like everyone else in the United States. *See Zadvydas*, 533 U.S. at 693. And while the new administration may have changed how it prioritizes the removals of noncitizens, it may not do so at the expense of fairness and due process. *See Trump v. J.G.G.*, No. 24A931, 2025 WL 1024097, at *2 (Apr. 7, 2025) (per curiam) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings."). It also may not do so in violation of its own regulations. *See Gulf States Mfrs., Inc. v. Nat'l Labor Relations Bd.*, 579 F.2d 1298, 1308 (5th Cir. 1978) ("It is well settled that an Executive Agency of the Government is bound by its own regulations, which have the force and effect of law, and the failure of an agency to follow its regulations renders its decision invalid."); *see also Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 755 (S.D. Tex. 2008) ("Where individual interests are implicated, the Due Process clause requires than an executive agency adhere to the standards by which it professes its action to be judged." (citing *Vitarelli v. Seaton*, 359 U.S. 535, 547 (1959))). With these principles in mind, the Court will consider whether the government is entitled to summary judgment and, if not, what relief is due to Villanueva.

## A.    <u>Jurisdiction</u>

The government does not challenge the Court's jurisdiction to entertain Villanueva's petition, but it does contend that the Court may not review its

discretionary decision to revoke Villanueva's Order of Supervision. Under 8 U.S.C. § 1252(a)(2)(B)(ii), federal courts have no jurisdiction to review a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *See also* 8 C.F.R. § 241.4. (permitting ICE officials to decide to revoke supervised release "in the exercise of discretion"). Therefore, the Court agrees that it cannot review the discretionary decision to revoke Villanueva's Order of Supervision.

But Villanueva does not challenge the purported decision to revoke his Order of Supervision.[2] Instead, he challenges the manner in which the government has re-detained him under this purported order. The Court unquestionably has jurisdiction to review Villanueva's claims that the government has violated his statutory and constitutional rights to due process by re-detaining him. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (citing 28 U.S.C. § 2241(c)(3)); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (per curiam) (courts retain the power to hear statutory and constitutional challenges to immigration detention when those claims do not challenge the final order of removal). Nothing in 8 U.S.C.

---

[2]The Court refers to this as a "purported" revocation because the government has not provided a copy of an order revoking supervision to either Villanueva or the Court. Absent this, nothing before the Court demonstrates that such an order exists.

§ 1252(a)(2)(B)(ii) prevents the Court from considering Villanueva's challenge to the manner in which the government revoked his Order of Supervision or considering whether the government followed its own regulations in doing so. *See Zadvydas,* 533 U.S. at 687-88 (holding that a § 2241 petition is the proper vehicle for a petitioner to use to challenge the legality and constitutionality of post-removal-period detention); *Oyelude v. Chertoff,* 125 F. App'x 543, 546 (5th Cir. 2005) (courts have jurisdiction to review detention "insofar as that detention presents constitutional issues, such as those raised in a habeas petition"); *Mantena v. Johnson,* 809 F.3d 721, 728-29 (2d Cir. 2015) (even when a "statute strips jurisdiction over a substantive discretionary decision, [it] does not strip jurisdiction over procedural challenges" and when procedural requirements bind an official's exercise of discretion, "courts retain jurisdiction to review whether those requirements have been met").

Villanueva's petition does not challenge his removal; he challenges the manner in which the government revoked his release, which he contends was done without due process and in violation of ICE's own regulations. Similarly, Villanueva does not challenge the government's ability detain him for the time necessary to effect his removal. Instead, he challenges the government's authority to hold him in detention indefinitely while it tries to find a third country that will accept him. These types of claims not barred by 8 U.S.C. § 1252(g). To the extent

that the government's motion for summary judgment can be read to challenge the Court's jurisdiction to entertain Villanueva's due process and statutory claims, the motion is denied.

## B.   Violation of the INA and its Regulations

The statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees. *See United States v. Caceres,* 440 U.S. 741, 760 (1979). For Villanueva's detention to be constitutional, the government must have complied with both the applicable statutory provisions and its own regulations. *Id.* (when federal regulations afford individual rights and protections, the Supreme Court has insisted on requiring an agency's compliance with its own regulations). Villanueva alleges three claims based on alleged violations of the statutes and regulations applicable to the proceedings against him: (1) his rights were violated in connection with the purported revocation of his Order of Supervision; (2) his rights have been violated in connection with his right to challenge the revocation; and (3) his rights have been violated in connection with his potential removal to a third country. The Court considers each of these challenges in turn.

## 1.   The Revocation of the Order of Supervision

Villanueva first contends that the government violated his due process rights by purporting to revoke his Order of Supervision without complying with the

regulations governing such revocations. As explained above, once Villanueva was

released from detention under an Order of Supervision, the revocation of that release

was subject to the provisions of 8 C.F.R. § 241.4(*l*)(2). That subsection specifically

limits which government officials have the authority to revoke an Order of

Supervision:

> The Executive Associate [Director] shall have authority, in the exercise
> of discretion, to revoke release and return to [ICE] custody a
> [noncitizen] previously approved for release under the procedures in
> this section. A district director may also revoke release of a
> [noncitizen] when, in the district director's opinion, revocation is in the
> public interest and circumstances do not reasonably permit referral of
> the case to the Executive Associate [Director].

8 C.F.R. § 241.4(l)(2). The same subsection limits the exercise of the discretion to

revoke an Order of Supervision:

> Release may be revoked in the exercise of discretion when, in the
> opinion of the revoking official:
>
> (i)  The purposes of release have been served;
>
> (ii)  The [noncitizen] violates any condition of release;
>
> (iii)  It is appropriate to enforce a removal order or to commence
> removal proceedings against a[ noncitizen]; or
>
> (iv)  The conduct of the [noncitizen], or any other circumstance,
> indicates that release would no longer be appropriate.

8 CFR § 241.4(*l*)(2). Villanueva asserts that the government did not comply with

either of these binding regulations in revoking his Order of Supervision.

16/31

Scroggins's declaration contains no facts concerning whether Villanueva's Order of Supervision has ever been revoked—much less whether it has been legally revoked for a permissible reason by an order signed by the Executive Associate Director of ICE, someone to whom the Executive Associate Director has legally delegated authority, or a district director who has made specific findings that the circumstances "do not reasonably permit referral of the case to the Executive Associate [Director]. 8 C.F.R. § 241.4(*l*)(2). Instead, it states only that Villanueva was arrested and re-detained "due to the current administration's renewed emphasis on removing criminal aliens." (Dkt. 12-1, p. 6). In the absence of some evidence showing that Villanueva's Order of Supervision was lawfully revoked by someone with the authority to do so and for a reason lawfully permitted, the government has failed to show that it afforded Villanueva with due process in connection with the purported revocation of his Order of Supervision.

The record before the Court shows that Villanueva was arrested and re-detained in violation the statutes and regulations that govern the revocation of a lawful Order of Supervision. The government's motion does not show that genuine issues of fact exist material to the question of whether Villanueva's has been lawfully re-detained under a valid revocation of his Order of Supervision. The government's motion for summary judgment on this issue is denied.

### 2. <u>The Right to Challenge the Purported Revocation</u>

Villanueva also contends that the government violated his due process rights by failing to comply with the requirements of 8 C.F.R. § 241.4(*l*)(1). That section provides:

> Any [noncitizen] . . . who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. . . . *Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole. The [noncitizen] will be afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification.*

8 C.F.R. § 241.4(*l*)(1) (emphasis added).

Villanueva asserts that he has never been provided with a notification of the revocation of his Order of Supervision, has never been advised of the reasons for the purported revocation, and has never been provided with the informal interview required by § 241.4(*l*)(1). In neither its motion for summary judgment nor the Scroggins' declaration does the government allege, much less offer evidence to show, that it has complied with these requirements, which are contained in its own regulations.

"Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020); *see also Gulf States Mfrs., Inc. v. Nat'l Labor Relations Bd.*, 579

F.2d 1298, 1308 (5th Cir. 1978) ("It is well settled that an Executive Agency of the Government is bound by its own regulations, which have the force and effect of law, and the failure of an agency to follow its regulations renders its decision invalid."); *Gov't of Canal Zone v. Brooks*, 427 F.2d 346, 347 (5th Cir. 1970) (per curiam) ("It is equally well established that it is a denial of due process for any government agency to fail to follow its own regulations providing for procedural safeguards to persons involved in adjudicative processes before it."). Multiple courts have held that the government's failure to follow its own immigration regulations may warrant the release of a detained noncitizen. *See, e.g., Bonitto*, 547 F. Supp. 2d at 756; *Zhu v. Genalo*, No. 1:25-cv-06523 (JLR), 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025); *Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1983677 (N.D. Cal. July 17, 2025); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 165 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017) ("While ICE does have significant discretion to detain, release, or revoke aliens, the agency must still follow its own regulations, procedures, and prior written commitments."). The government's position that it can choose, based on a change in administration, not to comply with its own regulations is unprecedented.

The government does not address Villanueva's claim that it violated his due process rights by failing to comply with its own regulations, much less point to evidence to show that genuine issues of fact exist material to his claim. The

government's motion for summary judgment on these claims is denied.

### 3.    <u>Notice of Removal to a Third Country</u>

Villanueva also contends that the government has violated his due process rights by failing or refusing to tell him what third country it intends to send him to so that he will have an opportunity to object and be heard on any objections, if necessary.

Removal proceedings determine not only *whether* a noncitizen may be removed from the United States but also to *where* he may be removed.    In determining the location of removal, the law entitles the noncitizen to first voluntarily select a country of removal. *See* 8 U.S.C. § 1231(b)(2)(A)(i); 8 C.F.R. § 1240.10(f).  If the noncitizen does not do so, the immigration judge will designate the country of removal and may also designate alternate countries to which the noncitizen may be removed. *See* 8 C.F.R. § 1240.10(f).  In addition, the immigration judge may designate a country or countries to which the noncitizen *may not* be removed if the noncitizen proves to the court's satisfaction that the noncitizen is likely to be tortured or persecuted if removed to that country.    *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b).  In that circumstance, the government may remove the noncitizen to any third "country whose government will accept the [noncitizen] into that country."  8 U.S.C. § 1231(b)(2)(E)(vii).  But the noncitizen may not be removed to any country in which there is reason to believe that he would

20/31

be tortured or persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 208.16-208.18; 8 C.F.R. §§ 1208.16-1208.18. Therefore, when the government intends to remove a noncitizen to a third county, the government must provide notice of the intended removal that is sufficient to enable the noncitizen to challenge that removal either as violating an order of withholding or as removing him to a country that will subject him to torture or persecution. *See, e.g., Noem v. Abrego Garcia*, No. 24A949, 2025 WL 1077101, at *2 (Apr. 10, 2025) (Sotomayor, J., concurring); *Andriasian v. Immigr. & Naturalization Serv*, 180 F.3d 1033, 1041 (9th Cir. 1999). The "notice must be afforded within a reasonable time and in such a manner as will allow [the noncitizen] to actually seek . . . relief in the proper venue before removal occurs." *J.G.G.*, 2025 WL 1024097, at 2.

Villanueva contends that the government has violated his due process rights by failing to notify him of what country it intends to remove him to so that he will have an opportunity to object, if necessary. In response, the government indicates that it has not yet found a country willing to accept Villanueva, so no right to any process has yet been triggered. Villanueva points to no authority that requires the government to provide him with notice of the countries to which it has applied when those countries have not yet agreed to accept him. At this stage of the proceedings, then, Villanueva has not established that his due process rights have been violated in this context.

Nevertheless, Scroggins's declaration does not address this claim, and neither he nor the government offer any assurances that Villanueva will be afforded the required notice once it identifies a third county that will accept him. So while the government is not entitled to summary judgment on this claim, Villanueva's claim for relief on this issue is premature.

## C.   **The Fifth Amendment Violation**

In addition to his claims based on the violation of various immigration statutes and regulations, Villanueva contends that his re-detention violates due process because his removal from the United States is not reasonably likely to occur in the foreseeable future. In response, the government contends that it may detain Villanueva indefinitely because he is inadmissible under 8 U.S.C. § 1182(a)(6). Alternatively, the government contends that Villanueva's current detention is presumptively valid under *Zadvydas*. The government's positions are not well taken.

To the extent that the government contends that it can detain Villanueva indefinitely, it is incorrect. In *Zadvydas*, the Supreme Court specifically rejected the argument that the government could detain a removable noncitizen indefinitely. *Zadvydas*, 533 U.S. at 682. The Supreme Court held that, despite the apparently clear language of 8 U.S.C. § 1231(a)(6), due process prohibits the government from detaining an individual indefinitely after the 90-day removal period has expired. *Id.*

22/31

at 689 (specifically stating that § 1231(a)(6) "does not permit indefinite detention"). Instead, detention is limited to the period reasonably necessary to bring about the removal. *Id.* Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Id.* at 699.

In this case, Villanueva contends that his removal is not reasonably foreseeable and therefore his re-detention violates *Zadvydas*. He points out that the government has been unsuccessful in finding a country willing to accept him, and it has not identified any country that it is currently in contact with about Villanueva's removal. Neither the government's motion nor Scroggins's declaration identify any country that the government has recently contacted about Villanueva's removal. Considering the government's past failure to identify a country willing to accept Villanueva and its current refusal to identify any possible third country for Villanueva's removal, the Court cannot say that his removal is reasonably foreseeable. Villanueva's current detention therefore violates the Due Process Clause, as explained in *Zadvydas*.

In the alternative, the government contends that Villanueva's detention does not violate *Zadvydas* because he has not yet been detained for more than six months. The government contends that because it re-detained Villanueva on July 20, 2025, it may hold him for six months from that date before running afoul of *Zadvydas*.

But nothing in *Zadvydas* precludes a challenge to detention before the

23/31

presumptively constitutional time period has elapsed. *Zadvydas* specifically holds that continued detention is proper only when the noncitizen's removal is reasonably foreseeable. "[I]f removal is not reasonably foreseeable, the court should hold continued detention is unreasonable and no longer authorized by statute." *Id.* at 699-700. The government's contention that it may avoid the holding of *Zadvydas* and re-start the six-month presumptively constitutional detention clock by simply releasing and then re-detaining a noncitizen has no basis in either the statutes, the regulations, or *Zadvydas* itself. *See, e.g., Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025) (rejecting the government's argument that the six-month period resets when the government re-detains a noncitizen); *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *Chen v. Holder*, No. 6:14-2530, 2015 WL 132366635, at *2 (W.D. La. Nov. 20, 2015) (rejecting the government's argument that a petition was premature under *Zadvydas* and noting that "[s]urely, under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government, while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals.") (cleaned up). The Court recognizes that at least one court has allowed the government to engage in this type of gamesmanship. *See, e.g., Guerra-Castro v. Parra*, No. 1:25-cv-22487, 2025 WL 1984300, at *4 (S.D.

24/31

Fla. July 17, 2025). Two other courts appear to have accepted this argument but have based their rejection of the petitioners' *Zadvydas* claims on facts showing that the petitioners' removals were reasonably foreseeable. *See Thai v. Hyde*, No. 25-11499-NMG, 2025 WL 1655489, at \*3 (D. Mass. June 11, 2025); *Meskini v. Att'y Gen. of the United States*, No. 4:14-cv-42, 2018 WL 1321576, at \*4 (M.D. Ga. Mar. 14, 2018). Despite this split of authority, the Court does not read *Zadvydas* to permit the government to indefinitely detain a noncitizen by the simple expedient of releasing and then re-detaining him in a series of "presumptively constitutional" six-month increments. The Court therefore rejects the government's contention that Villanueva must remain in detention for six months before the Court may consider whether his continued detention violates his due process rights.

However, even if the government can "reset" the six-month presumptively constitutional detention period by releasing the noncitizen and then re-detaining him, that would not require dismissal of Villanueva's habeas petition because the presumption of constitutionality during that six-month period is rebuttable. *See, e.g., Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) (the "six-month presumption is not a bright line" and *Zadvydas* "did not require a detainee to remain in detention for six months . . . before a habeas court could find that the detention is unconstitutional"); *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at \*5 (D. Md. Sept. 8, 2025) (collecting cases). Even within the

25/31

presumptively constitutional detention period, whether a noncitizen's detention is constitutional hinges on whether his removal from the United States is reasonably likely in the foreseeable future, not on how long the noncitizen has been detained. *See Zadvydas*, 533 U.S. at 699.

The undisputed facts in this case show that Villanueva has been granted a withhold of his removal to Mexico, which is the only country to which he has a claim to citizenship or legal immigration status. The government cannot remove him to Mexico without returning to the immigration court to seek an order lifting the order for a withhold of removal, *see* 8 C.F.R. § 1208.24(f), but the government has not initiated such proceedings and the Scroggins declaration does not state that any such proceedings are anticipated. Further, the Scroggins declaration demonstrates that during the 8-year period since Villanueva was ordered removed, the government's efforts to remove him—sparse and sporadic as they may have been—have been unsuccessful. The declaration contains no information tending to show that circumstances have changed to the point that Villanueva's removal is now reasonably foreseeable when it was not before. Further, any efforts to remove Villanueva to a third country would likely be delayed by proceedings contesting his removal to the third country finally identified. *See Johnson v. Guzman Chavez,* 594 U.S. 523, 528, 530-31 (2021); *Zavvar*, 2025 WL 2592543, at *8 ("The fact that Zavvar likely will have the opportunity to seek further relief from the Immigration

26/31

Court, and then potentially file appeals from any adverse rulings, further demonstrates that removal is not likely in the reasonably foreseeable future."); *Munoz-Saucedo v. Pittman*, No. 25-2258 (CPO), 2025 WL 1750346, at \*7 (D.N.J. June 24, 2025) (finding relevant to the reasonably foreseeable analysis the fact that "even if ICE identified a third country, Petitioner . . . would be entitled 'to seek fear-based relief from removal to that country,' which would require 'additional, lengthy proceedings'").

The Court is mindful that the government has the right to enforce Villanueva's Order of Removal. But the government may not detain Villanueva for an indefinite and undetermined period of time while it tries to effect that removal when the circumstances are such that his removal is not reasonably likely in the foreseeable future. Such an action violates the Due Process Clause, as explained in *Zadvydas*. The government points to no evidence showing that disputed issues of fact exist material to this determination. The government's motion for summary judgment on this basis is denied.

### D.   <u>Scope of Relief</u>

Having determined that the government is not entitled to summary judgment in its favor and that Villanueva's petition is well taken, the question remains as to what relief to afford Villanueva. In resolving that question, the Court must consider the three factors set out by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319,

334-35 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Here, even if the government has the discretion to revoke Villanueva's supervision, his constitutionally protected liberty interests are implicated by his re-detention. The Supreme Court has stated that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Moreover, individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). This is true even when the released individual is subject to extensive conditions of release. *Id.* at 148; *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

Villanueva has a liberty interest in his continued release under his Order of Supervision. He has been free under that Order for over eight years. He has a job and a family. He has complied with all of the terms of his Order of Supervision. There is no principled reason to find that Villanueva does not have an overwhelming liberty interest in his continued release that may not be removed without due process.

28/31

Second, the risk of an erroneous deprivation of Villanueva's rights is high. The regulations enacted by the government itself are intended to ensure that noncitizens who have been released to supervision do not arbitrarily have that supervision revoked. By failing to follow its own regulations, the government has denied Villanueva notice of its intent to revoke his supervision, notice of the reasons for the revocation, and an opportunity to challenge those reasons. The government's only explanation for its failure to comply with its own regulations is a change in emphasis by the new administration. While the administration is free to change its areas of enforcement emphasis, it may not do so at the expense of individuals' due process rights. The risk of an arbitrary and erroneous deprivation under these circumstances is undeniably significant.

Third, the burden imposed on the government does not outweigh Villanueva's interests. To be sure, the government has a weighty interest in removing deportable noncitizens, ensuring compliance with Orders of Supervision, and protecting the public. But in this case, those interests will not be impaired by requiring the government to comply with its own regulations in determining whether to revoke Villanueva's supervision and whether to re-detain him. As explained above, the government can have no legitimate interest in ignoring its own regulations, which are intended to ensure that the discretion afforded to the government's agents is not exercised arbitrarily.

29/31

The government does not allege in its motion, and Scroggins does not attest in his declaration, that Villanueva failed to comply with his Order of Supervision or that his removal is imminent. Further, the government identifies no factual basis to believe that Villanueva poses a danger to the public. While the government recounts Villanueva's criminal history, those events predated the government's initial decision to release Villanueva on an Order of Supervision, and the government does not identify any changed circumstances that would appear to warrant the revocation of Villanueva's supervision and his re-detention without even the barest hint of due process.

Having considered Villanueva's petition and its attachments, the government's response and attachments, and the law, the Court finds that the balance of the factors establishes that the government violated Villanueva's due process rights by re-detaining him without complying with its own regulations and the law. The Court also finds that Villanueva's continued detention violates due process because it is not reasonably likely that he will be removed in the foreseeable future. The only way to vindicate Villanueva's due process rights is to order his release from custody. The Court therefore grants Villanueva's petition and orders his release subject to the conditions set forth below.

## IV.    CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

30/31

1. The respondents' motion for summary judgment, (Dkt. 12), is **DENIED**.

2. Villanueva's petition for writ of habeas corpus, (Dkt. 1), is **GRANTED**.

3. **Within three hours of the issuance of this Order,** the respondents must **RELEASE** Villanueva from custody to a public place pursuant the original conditions of the Order of Supervision of March 23, 2017.

4. The respondents must **NOTIFY** Villanueva's counsel of the exact location and exact time of Villanueva's release **no less than two hours** before his release.

5. Once the respondents identify a country that is willing to accept Villanueva, the respondents must **NOTIFY** Villanueva and his counsel of the country to which it intends to remove Villanueva with sufficient time for him to object, if necessary.

6. Final judgment will be separately entered.

**The Clerk of Court will provide a copy of this Order to the parties.**

SIGNED at Houston, Texas on ___Sept 26_____, 2025.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE